UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAVIER LUIS,

        Plaintiff,

v.

JOSEPH ZANG, et al.,

        Defendants.

Case No. 1:12-cv-629

Dlott, J.
Bowman, M.J.

## MEMORANDUM OPINION AND ORDER

This case is before the undersigned following remand from the Court of Appeals for the Sixth Circuit. Currently pending is Plaintiff's second motion to appoint counsel,[1] to appoint an expert, and for miscellaneous relief. (Doc. 182). On January 20, 2017, Plaintiff filed an "emergency motion for extension of filing deadline and for a determination or ruling on pending motion for appointment of counsel." (Doc. 185). Both of Plaintiff's motions will be denied.

**I. Background**

Since filing suit nearly five years ago, Plaintiff has proceeded *pro se* in the prosecution of his claims at the trial court level, although he was represented by counsel during the pendency of his successful appeal to the Court of Appeals for the Sixth Circuit. That appeal challenged this Court's dismissal of Plaintiff's claims against a single defendant, Awareness Technologies, Inc. In a published opinion reversing and remanding that decision, the Sixth Circuit summarized the facts as follows:

---

[1] Plaintiff refers to a ruling that denied an earlier motion to appoint counsel, but the docket sheet of this case does not reflect the referenced order. The current motion amends an earlier version of the same motion, but the prior version was withdrawn. (Doc. 180).

> Javier Luis, a resident of Florida, developed an online personal relationship with Ohio resident Catherine Zang. The relationship was apparently platonic, but Catherine's husband, Joseph Zang, was nonetheless suspicious of his wife's online activities. This caused Joseph to secretly install a product known as WebWatcher on the computer used by Catherine in order to monitor her communications. According to Luis, WebWatcher and its manufacturer, Awareness Technologies, Inc., surreptitiously intercepted the emails, instant messages, and other communications that were sent between Luis and Catherine. Awareness then allegedly disclosed the communications to Joseph, who used them as leverage to divorce Catherine on favorable terms.
>
> Upset by the capture and disclosure of his otherwise private communications, Luis filed suit against Joseph Zang, Awareness, and several others. He eventually settled his claims against all the defendants other than Awareness. With respect to Awareness, Luis alleged that the involvement of its WebWatcher "spyware" in secretly recording the communications at issue violated the federal Wiretap Act, the Ohio Wiretap Act, and Ohio common law.

*Luis v. Zang*, 833 F. 3d 619, 623 (6th Cir. 2016). Underlying Plaintiff's appeal was a Report and Recommendation ("R&R") filed on March 5, 2013, in which the undersigned recommended that Awareness's motion to dismiss all claims for failure to state a claim be granted. That R&R was adopted by the presiding district judge.

In a spit decision, the appellate court disagreed with this Court's dismissal of Plaintiff's claims, holding that Plaintiff had adequately stated two federal claims under different sections of the federal Wiretap Act as well as related state law claims. The majority opinion[2] found Plaintiff to have adequately alleged: (1) that Awareness intentionally intercepted Luis's electronic communications, in violation of 18 U.S.C. §2511; (2) that Awareness also violated 18 U.S.C. §2512; and (3) that Awareness

---

[2] Judge Gilman delivered the opinion of the court, in which Judge Merritt joined and as to which Judge Batchelder dissented. As the dissent points out, Luis did not present his current theory of his claims against Awareness before the undersigned, but instead first raised them in his objections to the R&R. *Id.* at 644 n.1.

2

violated Ohio state law (a) by intercepting and using his electronic communications within the meaning of Ohio's Wiretap Act, and (b) by invading his privacy within the meaning of the common-law tort. *See id*. at 625 (defining Plaintiff's causes of action).

In the intervening time period between the dismissal of Awareness by this Court and reinstatement of the claims against Awareness on remand, ten other defendants in this case, as well as all claims and additional defendants in a closely related and partially consolidated case, have been dismissed. Thus, at this point in the litigation, only Awareness and Plaintiff remain. On remand, Plaintiff seeks the appointment of counsel by this Court, as well as the appointment of one or more experts on his behalf. (Doc. 182). Defendant Awareness has filed a response in opposition to Plaintiff's motion, to which Plaintiff has filed a reply. (Docs. 183, 184).

**II. Analysis**

**A. Plaintiff's Motion for the Appointment of Counsel**

Plaintiff's 22-page motion seeks the appointment of counsel under 28 U.S.C. § 1915(e)(1), which states that a court "may request an attorney to represent any person unable to afford counsel." While the statute permits a court to exercise its discretion to seek the appointment of counsel for an indigent person, civil litigants have no constitutional right to the appointment of counsel at government expense. *See Anderson v. Sheppard*, 856 F.2d 741 (6th Cir. 1988).

The instant case does not present the type of "exceptional circumstances" that would justify this Court's rare request to counsel to take on the pro bono representation of a *pro se* civil litigant. *Lavado v. Keohane*, 992 F.2d 601, 605-606 (6th Cir. 1993);

*Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996)(observing that courts do not appoint counsel in civil cases absent "truly extraordinary" circumstances). The type of "exceptional" or "truly extraordinary" circumstances that would justify the appointment of counsel extends well beyond relatively routine factors such as illiteracy, poverty, lack of legal knowledge, or illness. Unfortunately, the Court's civil case docket contains large numbers of civil cases filed by plaintiffs proceeding *pro se* who seek the Court's appointment of counsel. Virtually all of them would benefit from the appointment of counsel, but virtually none of them will be appointed counsel. While many of these cases are initiated by prisoners, others are filed by individuals who suffer from a variety of serious mental or physical illnesses, or who, like Plaintiff herein, cite poverty and a desire to level the playing field. (*See, e.g.* Doc. 182 at 14, arguing a "solo pro se [plaintiff] versus a corporate entity's boundless resources is hardly fair under anyone's definition of justice.")

      One of the many reasons that this Court cannot appoint counsel to the vast majority of *pro se* litigants who seek such appointments is that the Court does not have either funds from which counsel can be compensated, or a ready list of attorneys who are eager to take on such cases without compensation. Importantly, this Court has no power to appoint counsel unless counsel is also willing to serve, because §1915(e)(1) only authorizes a "request" that an attorney represent an *in forma pauperis* litigant. *See Mallard v. United States District Court,* 490 U.S. 296 (1989). Congress generally provides funding for the appointment of defense counsel only in criminal cases, in which the right to counsel is secured by the Sixth Amendment of the United States

4

Constitution. No similar right to counsel exists for an individual who voluntarily initiates a civil suit for money damages, no matter how meritorious a plaintiff may believe his or her claim to be. A small number of federal statutes, including those relating to the representation of social security claimants and some civil rights laws, provide for compensation of attorney's fees in civil cases – typically, at the conclusion of a case <u>if</u> a plaintiff's attorney has prevailed on the merits. However, such cases are an exception to the American rule that each side in litigation must bear his or her own litigation costs.

### Residence in Florida Not Grounds For Appointment

Plaintiff urges this Court to appoint him counsel based upon the fact that he resides in Florida, where he first initiated this litigation. He asserts that "his knowledge of local procedures in a court 1,000 miles away is surely lacking." Plaintiff admits he has been "moderately successful" at writing motions and supporting legal memoranda, but argues that he "is not adept at the procedural rules" including discovery.

Plaintiff does not need counsel to assist him with "local procedures" in this Court, as all local rules and practices are publicly available on the Court's website. Likewise, the rules of discovery along with relevant case law may be ascertained through the same type of thorough legal research that Plaintiff has proven himself capable of through virtually every motion and memorandum he has filed.

With respect to Plaintiff's continued complaints that "there is no good reason for this case to have remained in Ohio after the other defendants all settled," (Doc. 182 at 14), the undersigned can only reiterate this Court's prior observation. The Florida district court transferred this case to this district after ruling that it lacked personal

jurisdiction over the Defendants.³ (Doc. 64). In rejecting a prior complaint about the transfer, the undersigned wrote:

> Plaintiff cannot claim entitlement to a forum where jurisdiction did not lie. As Defendants and the Florida court pointed out, Plaintiff made no argument in opposition to the claim of improper venue. Regardless of his current opposition, the prior ruling is the law of the case and will not be revisited by this Court.

(Doc. 142 at 11, PageID 1061). The fact that all Defendants other than Awareness (a California corporation) have now been dismissed, as has the closely related case with which Mr. Luis's case was previously partially consolidated, does not change the law of the case concerning jurisdiction and venue. In any event, Plaintiff has stated that he intends to continue in this Court. (Doc. 182 at n. 20).

### Demonstrated Abilities Disfavor Appointment

Plaintiff's current motion and entire course of this litigation underscore that Plaintiff is more than capable of pursuing his remaining claims against Awareness *pro se*. Plaintiff's level of skill, intelligence, and ability to articulate his claims and perform legal research are obvious, and would be supported by the many documents that Plaintiff has filed in the record even if Plaintiff had not graduated from law school.⁴

Given the dramatic reduction in the number of claims and defendants through

---

³Pursuant to an Amended Order of Consolidation filed on January 31, 2013, a pre-existing related case in this Court (Case No. 1:11-cv-884) and the above-captioned case were partially consolidated solely for purposes of pretrial proceedings. (Doc. 101).

⁴The record reflects that Plaintiff graduated from law school, although he apparently never sat for a bar exam. This Court's recognition of Plaintiff's educational achievement is intended as but one of many factors considered in the discretionary determination of whether to appoint counsel. It is not, as Plaintiff protests, an indication that this Court has ignored the practice of construing *pro se* pleadings liberally.

settlement and dismissal,[5] as well as the dismissal of a related case, this case has become less complex than when originally filed. In addition, the Sixth Circuit's analysis has effectively parsed the relevant factual and legal issues in Plaintiff's remaining claims against Awareness.

### Desire to Overturn Precedent Not Grounds For Appointment

Plaintiff contends that he also seeks the appointment of counsel due to the "judicial neutering of the Wiretap Act[]," (Doc. 182 at 7). Plaintiff makes clear that he seeks assistance to overturn established legal precedent interpreting the Wiretap Act, including but not limited to a "contemporaneity" requirement that was upheld by the Sixth Circuit in this case. "[T]his lawsuit will not turn its attention towards an eventual circuit court redress of that long outdated and always highly improper 'contemporaneous intercept' standard." (*Id.*) "Addressing the 'contemporaneous standard's' dangerous limitations …will be a primary focus in appeals in the second half of this lawsuit. Surely there is a need for an eventual overturning of the 'contemporaneous standard' of intercept." (*Id.*) He writes further: "[T]his case has yet to truly address the main reason for this lawsuit – the eventual overturning of a Sixth Circuit precedent that helped enable the spyware industry to gain a foothold in the corporate world." (*Id.* at 11, citing *Smoot v. United Transportation Union*, 246 F.3d 633 642-645 (6th Cir. 2001)).[6]

---

[5]Awareness questions Plaintiff's ability to maintain *in forma pauperis* status in light of his prior settlements for "at least $30,000," but the Court finds no grounds to question Plaintiff's status at this time.
[6]Citing *Smoot's* holding on damages. Plaintiff states that he will "now focus on…how improper interpretation of Congressional intent of intended damages has undermined the Wiretap Act in the Digital Age." (Doc. 182 at 17, n.14). Plaintiff's challenge to established law on damages is extremely premature.

Plaintiff hopes that his case will "herald the beginning of the end of employer monitoring in the workplace." (Doc. 182 at 11). However, Plaintiff's request for counsel to challenge established and controlling Sixth Circuit precedent, including a holding in this very case, is not grounds for such appointment.

In the original 2013 R&R, this Court briefly explained the differences between the Wiretap Act and the Store Communications Act, as defined both by the statutory provisions and relevant case law. The undersigned noted that the majority of courts have held that the Wiretap Act prohibits only the "contemporaneous" interception of electronic communications. This Court also reasoned that Plaintiff had adequately pleaded that an "intercept" occurred. (See Doc. 109 at 14). On appeal, the Sixth Circuit upheld the contemporaneity requirement, holding that the definition of "intercept" applies "solely to the transfer of electronic signals," and "does not apply to the acquisition of signals that are no longer being transferred" but are instead found in electronic storage. *Id.*, 833 F.3d at 627. The Sixth Circuit emphasized that interception "must thus occur contemporaneously with the transmission of the communication; it must, in other words, catch the communication 'in flight' before the communication comes to rest and ceases to be a communication." *Id.* at 627-628, citing *Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457, 461-62 (5th Cir. 1994); *see also United States v. Szmuszkiewicz*, 622 F3d 701, 704 (7th Cir. 2010), *as amended* (Nov. 29, 2010).

While the Sixth Circuit agreed with this Court concerning the definition of "intercept," the appellate court disagreed with the view that a manufacturer like

8

Awareness could not be held liable under either § 2511 or § 2512 of the Wiretap Act.[7] Instead, construing Plaintiff's allegations liberally, the Sixth Circuit held that the marketing materials filed as an exhibit to the complaint along with the amended complaint contained "factual content sufficient to support a reasonable inference that Awareness, via WebWatcher, acquired Luis's electronic communications contemporaneously with their transmission" or while they were "in flight" for purposes of § 2511. (*Id.* at 630).[8] The Sixth Circuit further reasoned that Congress's definition of the class of defendants subject to civil suit under § 2520 of the Wiretap Act was "broad enough to include those entities – such as Awareness – that allegedly violate §2512(1)(b) by manufacturing and remaining involved in the operation of a device that is primarily used to commit such violations" despite the fact that §2512 alone (a criminal provision) does not permit private civil suits. *Id.* at 635. Thus, the Sixth Circuit confirmed that if the facts alleged are proven, Awareness can be held civilly liable under § 2512 and § 2520 for taking "a much more active role in causing the Wiretap Act violation in this case" than in other cases in which an individual defendant merely possessed a device. *Id.* at 637.

**Intention to Seek New Defendants or Claims Not Grounds for Appointment**

Plaintiff argues that during discovery, he will seek "other viable defendants," speculating that "there is a likelihood that Defendant operates in conjunction with other

---

[7]Id. at 19-20 (pointing out that "the distcrict court largely agreed with the above analysis and concluded that Luis's communications had been intercepted," but holding that this Court erred in failing to find that Luis had properly alleged "that Awareness itself – not simply the WebWatcher user" is "responsible for the alleged intercept."

[8]The Sixth Circuit also held that this Court erred by relying upon an affidavit submitted by Awareness with its motion to dismiss, without converting the motion to one for summary judgment.

9

larger software companies" that may somehow be liable through their "hidden affiliations" with Awareness, which Plaintiff believes can only be discovered by "a computer expert and/or experienced lawyer." (Doc. 182 at 11). Plaintiff's speculation that new unidentified claims and/or Defendants may yet exist is not grounds for the appointment of counsel. Even if Plaintiff could assert new claims that would not be time-barred against newly discovered defendants, the Sixth Circuit's opinion narrowly defines the parameters of civil liability. *See Luis v. Zang,* 633 F.3d at 637 (holding that a defendant "is subject to a private suit under § 2520 only when that defendant also plays an active role in the use of the relevant device to intercept, disclose, or intentionally use a plaintiff's electronic communications.").

**No Additional Reasons Favor Appointment**

In the last seven pages of his supporting memorandum, Plaintiff argues vigorously that he should be appointed counsel on the basis of: (1) the presumed merits of his claims; (2) "exceptional circumstances"; (3) Plaintiff's inability to retain counsel due to the low amount of recoverable damages (under existing law) and the lack of familiarity of most attorneys with Internet law; and (4) Plaintiff's view that this Court's past rulings demonstrate an abuse of discretion, and that a failure to appoint counsel constitutes an additional abuse of discretion. None of the additional grounds persuade the undersigned to appoint counsel at this time.

In contrast to Plaintiff's insistence that the Sixth Circuit's opinion reflects the "proven…merit" of his claims, that court expressed no opinion on the merit of Plaintiff's claims. Instead, as a matter of first impression, the Sixth Circuit merely held that

10

Plaintiff had adequately <u>pleaded</u> several closely related federal and state claims, such that Defendant Awareness should be made to file an answer. At this point in the litigation, discovery has barely begun, and the merits remain uncertain. In its response in opposition to Plaintiff's motion for counsel, Awareness insists that it has evidence that the WebWatcher product does not operate in the manner alleged by Plaintiff in his complaint, but instead "operates by removing items from stored memory of the computer on which the software program has been installed." (Doc. 183 at 2). Awareness apparently intends to move for summary judgment on this factual issue, which goes to the heart of the "contemporaneity" requirement and definition of "intercept" of electronic communications.[9]

Considering all factors cited by Plaintiff, quite apart from practical considerations,[10] the undersigned finds no exceptional circumstances exist to support the appointment of counsel at this time. If dispositive motions are denied after discovery, Plaintiff may refile his motion to seek the assistance of trial counsel. *But see generally Lince v. Youngert*, 136 Fed. Appx. 779 (6th Cir. June 3, 2005) (upholding denial of trial counsel based upon observed capabilities of plaintiff as an able advocate who successfully opposed two motions for summary judgment, even if skilled attorney might have more skillfully tried the case).

---

[9]Plaintiff has suggested that he does not (yet) know whether he can satisfy the "contemporaneity" requirement under current law. In fact, he expresses an intention to use this lawsuit to overturn controlling Sixth Circuit precedent, including the contemporaneity requirement.

[10]Plaintiff seeks counsel with particular expertise in technical issues. This Court does not maintain a list of attorneys willing to accept pro bono appointments in civil cases, much less a list of attorneys with the type of unique and specific technical expertise that Plaintiff seeks.

11

Plaintiff also remains free to seek the appointment of counsel to represent him in a court-facilitated settlement conference. This Court will appoint counsel for *pro se* litigants when all parties have expressed an interest in a court-facilitated mediation. The appointment of counsel for that limited purpose is less rare in part because it is less burdensome, usually requiring counsel to appear together with Plaintiff on only a single day to negotiate a settlement with opposing counsel.[11]

### B. Plaintiff's Motion for the Appointment of Experts

In addition to seeking counsel, Plaintiff seeks the appointment of one or more technical experts on his behalf to "peer into the clandestine infrastructure within the little known corporate world of weapons-grade spyware likely derived and/or perfected in national security agency labs." (Doc. 182 at 4). He argues that the "nature of eDiscovery and the complicated software and algorithms central to this case demand appointment of experts in this field," and that such experts are prohibitively expensive. (*Id.* at 12). He suggests that the "timing of the intercepts, the algorithms used by their programmers to weed out illegal intercepts, as well as their marketing strategies are something Plaintiff is not adept at investigating." (*Id.* at 13). Plaintiff expresses hope that discovery of root kit software by an expert "will…likely expose the role that [national] security agencies played in unleashing this powerful root kit based software into the hands of corporate America," which "could lead to a larger expansion of this case delving into [the] intentional release of government lab created software into the hands of the public…." (Doc. 182 at 11, n.7).

---

[11] It is the practice of this Court for court-facilitated settlement conferences to be set before a different magistrate judge than the one who oversees pretrial management of the case.

Plaintiff cites Federal Rule of Evidence 706, which permits the court "discretion to appoint an expert and to apportion costs."  However, Rule 705 pertains to the appointment of a trial expert for the court and by the court.  Neither Rule 706 nor any other provision provides for the appointment of an expert on behalf of an indigent plaintiff.  Congress has authorized the waiver of filing fees and for transcript fees in some circumstances for litigants who proceed *in forma pauperis*, but has not authorized the waiver of other litigation expenses such as experts, court reporter costs, or copies. *See generally Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987), *cert denied*, 108 S. Ct. 1298 (1988).  As other courts have explained in denying similar motions:

> The authority of the Court to appoint an expert witness is virtually unquestioned. Fed.R.Evid. 706 (advisory committee notes) (citations omitted). But "[t]he rule does not provide a method by which the court may afford expert witness testimony to an indigent litigant at public expense. Congress has not appropriated any funds for the hiring of expert … witnesses to support the claims of indigent civil litigants." *Baker v. County of Missaukee,* No. 09–01059, 2011 WL 4477154, at *3 (W.D.Mich. Sept. 26, 2011).

*Colton v. Scutt*, 2012 WL 5383115, at *7 (E.D.Mich.,2012).

> Rule 706 permits the Court to appoint an expert witness to aid the Court, not a party, and requires his or her compensation to be taxed as a cost to the parties, not paid by the Court. Fed.R.Evid. 706(b), (c). *See Colton v. Scutt,* No. 10–CV–13073, 2012 WL 5383115, at *7 (E .D.Mich. Nov. 1, 2012) (*citing Dodson v. Wilkinson,* 304 F. App'x 434, 442 (6th Cir.2008)), *aff'd, Colton v. Cohen,* 2013 WL 3724835, at *2 (E.D.Mich. July 15, 2013). Because indigent plaintiffs must still bear the costs incident to litigation, including the payment of witness fees, *Brown,* 74 F. App'x at 614–15, [plaintiff] may not shift that expense to an opposing party or the Court.

*Christensen v. U.S.*, 2014 WL 1513140, at *4 (E.D.Ky.,2014).  In short, if this Court desires an expert to aid the Court at trial, it can and will appoint one.  However, it cannot

13

and will not appoint an expert to assist Plaintiff in discovery or to prove his claims at trial.

### C. Emergency motion for an extension of filing deadline and for a determination or ruling on motion for appointment of counsel

While Plaintiff's motion for the appointment of counsel was under review, dissatisfied with the Court's failure to rule as quickly as desired, Plaintiff filed an "emergency motion for extension of filing deadline and for a determination or ruling on pending motion for appointment of counsel." In this second motion, Plaintiff references the undersigned's statement during a pretrial case conference held in November, 2016 that the Court would endeavor to rule quickly on his anticipated motion for counsel. Plaintiff states that he "put on hold" any work on a motion to amend the pleadings, which deadline the Court set for January 31, 2017, in order to allow hoped-for counsel to assist him.

Plaintiff's current motion for counsel was not filed until after the calendar order was entered, and was not fully briefed until December 6, 2016. This Court has many cases, with criminal cases necessarily taking priority over civil cases. Although many motions for the appointment of counsel can be resolved more quickly than this one, the Court owes no apology for taking extra time to research and thoroughly consider Plaintiff's motion and extensive memoranda in this case, or for the additional time it took to construct this correspondingly detailed Memorandum Opinion and Order.

The deadlines set forth in November 3 calendar order were never conditioned on whether or not counsel would be appointed on Plaintiff's behalf, or when that motion

would be ruled upon. For that reason alone, denial of Plaintiff's request for a 30-day extension of the deadline to move to amend his pleadings or add parties would have been appropriate. However, the motion to extend the deadline is also now moot, as Plaintiff complied with the existing deadline by filing a motion seeking leave to amend.

Plaintiff appropriately included a copy of the tendered amended complaint as an exhibit to his motion for leave. (Doc. 187). However, he committed a procedural error by simultaneously filing the second amended complaint prior to the Court ruling on his motion for leave to file that pleading. (Doc. 186). The procedurally improper amended complaint will be stricken from the record as unauthorized, pending full briefing and a judicial ruling on the pending motion.

### III. Conclusion and Order

1. Plaintiff's motion for the appointment of counsel, for the appointment of an expert and for miscellaneous relief (Doc. 182) is DENIED;

2. Plaintiff's motion for extension of time in which to move to further amend his complaint against Awareness and/or to add new parties (Doc. 185) is DENIED AS MOOT in light of Plaintiff's compliance with the January 31, 2017 deadline;

3. Plaintiff's second amended complaint (Doc. 186) shall be STRICKEN based solely on the referenced procedural error, and shall not be refiled without leave of this Court.

                                               *s/ Stephanie K. Bowman*
                                               Stephanie K. Bowman
                                               United States Magistrate Judge