**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAVIER LUIS,                                     Case No. 1:12-cv-629

           Plaintiff,                          Dlott, J.
     v.                                        Bowman, M.J.


JOSEPH ZANG, et al.,

           Defendants.


**REPORT AND RECOMMENDATION**

The above-captioned case, initiated by Plaintiff *pro se* and *in forma pauperis* more than five years ago in Florida, has a lengthy procedural history.   Previously dismissed pursuant to a Judgment entered by this Court on June 20, 2014, the case has been revived and returns to this Court following remand from the Court of Appeals for the Sixth Circuit.   *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016).  Currently pending is Plaintiff's motion seeking leave to file a second amended complaint to add multiple new defendants and claims.[1] (Docs. 187, 189).   For the following reasons, the undersigned recommends denying Plaintiff's motion to add new defendants, to reinstate previously dismissed and unappealed claims, and to add new (previously unasserted) claims. However, Plaintiff's motion for leave to amend to clarify the factual and legal support for claims remanded to this Court should be granted.

---

[1]In addition to filing a motion seeking leave to file a second amended complaint on February 1, 2017 (Doc. 187), five days later Plaintiff filed a motion to amend/correct that same motion.  (Doc. 189).  Plaintiff explains in the latter motion that he had "mistakenly omitted" exhibits to his tendered second amended complaint, and that his "corrected amendment has also removed some mistakes and unnecessary paragraphs from the second amended complaint."  (*Id.*).

## I.    Background

This case was originally consolidated for pretrial proceedings with Lead Civil Case No. 1:11-cv-884, but the related 2011 case was closed when all claims and parties were dismissed in May of 2015.   Both the 2011 case and this case arise out of underlying divorce and custody proceedings between Catherine Zang and Joseph Zang in the Hamilton County Ohio Court of Common Pleas.  During the course of those state court proceedings, Plaintiff Catherine Zang learned that her now ex-husband had installed audio and video surveillance equipment in the marital residence, and spyware on a home computer.  In *Catherine Zang, et al. v. Joseph Zang, et al.*, Lead Case No. 1:11-cv-884, Plaintiff Catherine Zang and five other individuals filed suit against multiple corporate and individual defendants in this Court, asserting claims under the federal Wiretap Act as well as claims under state law.

During his divorce proceedings, Mr. Zang produced emails and messages between Catherine Zang and Javier Luis, the Plaintiff herein.  Mr. Luis did not join Lead Case No. 1:11-cv-884, but instead filed separate actions against many of the same defendants in both state and federal courts in Florida.[2]  Eventually, Plaintiff's state and federal cases were consolidated into a single federal case, and on August 20, 2012, the United States District Court for the Middle District of Florida transferred Mr. Luis's federal case to this Court.  (Docs. 63, 64 in Case No. 1:12-cv-629).  Plaintiff Luis's case was thereafter consolidated for purposes of pretrial proceedings with Lead Case No. 11-cv-884.

Although a number of the Defendants sued by Mr. Luis filed Answers to his

---

[2]Plaintiff first filed a complaint in state court in Florida on December 16, 2011, before filing a federal case on March 8, 2012.  (Doc. 187 at 1-2).

complaint as amended, Defendant Awareness Technologies filed a Motion to Dismiss the amended complaint in lieu of an Answer.[3]  (Docs. 68, 77).  On March 5, 2013, the undersigned recommended the granting of Defendant's motion in a Report and Recommendation, which was adopted as the opinion of the Court on June 20, 2014. (Docs. 109, 162).  Ultimately, Plaintiff successfully appealed that decision to the Sixth Circuit Court of Appeals.

In considering whether to allow further amendment of Mr. Luis's complaint following remand, it is helpful to review the Court's original Calendar Order as well as prior denials of Plaintiff's motions to amend his complaint and/or extend deadlines. After the related cases in this Court were consolidated for pretrial purposes, the undersigned entered a Calendar Order directing all parties to file any motions to amend their pleadings and/or add parties no later than May 1, 2013.  The initial discovery deadline was set to expire on January 15, 2014, with dispositive motions to be filed by March 4, 2014.  (Doc. 72).

On May 1, 2013, Plaintiff Luis purported to file an "amended complaint" in which he attempted to assert new claims against Awareness Technologies and other newly identified Defendants, many of whom are the same individuals that Plaintiff seeks to include in the recently tendered amended complaint. (*Compare* Doc. 121 with Doc. 189-1).  On May 2, 2013, Defendant Awareness Technologies moved to strike the improperly filed "amended complaint" on procedural grounds, because Plaintiff had failed to file any motion seeking leave of court as required by the Federal Rules of Civil Procedure and the Court's Calendar Order.  (Doc. 142).

---

[3]The record reflects that discovery proceeded among other parties while the motion to dismiss filed by Awareness remained pending.  A group of Defendants deposed Plaintiff Luis on September 9-10, 2013.

In partial response to the motion to strike filed by Awareness Technologies, on June 19, 2013, Plaintiff moved to amend the Calendar Order, seeking "a four-month post-hoc expansion of time in order to file a new motion to amend pleadings or add parties, up to September 3, 2013, with the same extension of time to provide his Rule 26(a)(2) expert disclosures."  Plaintiff sought "a similar four month expansion of time to complete even initial disclosures under Rule 26(a)(1), until August 1, 2013."  (Doc. 142 at 7).

On August 1, 2013, the Court granted the motion to strike the procedurally improper "amended complaint" and denied Plaintiff's motion to extend pretrial deadlines, including but not limited to the deadline for filing a motion seeking leave to further amend his complaint.  The Court's Order pointed out that Plaintiff already had amended his complaint numerous times since he had begun litigation in late 2011 or early 2012, prior to filing the improper (and arguably misnomered) "second amended complaint."

> Beginning with the consolidation of separate state and federal lawsuits filed [by] Plaintiff Luis in Florida, the record in Case No. 1:12-cv-629 contains multiple complaints and amended complaints, even without Plaintiff's promise of more to come. (*See, e.g.*, Docs. 1, 12, 14, 22, 39). Plaintiff's last "amended complaint" filed a year ago on July 20, 2012, named 11 corporate and individual defendants and spanned 43 pages. …The latest "amended complaint" identifies nineteen defendants (eight more than in his last amendment) and spans 56 pages.

(Doc. 142 at 13).

In his motion to extend the May 1, 2013 deadline for seeking leave to further amend, Plaintiff had represented that he had been "almost constant[ly] updating" his proposed Second Amended Complaint in response to media disclosures and WikiLeak information originally distributed by Edward Snowden.  (*Id.* at 8, citing Doc. 87 at 6). Rejecting Plaintiff's arguments, the Court denied Plaintiff additional time to seek leave to

4

amend based upon "the lack of a showing of good cause, the lack of proof of diligence in failing to comply with the deadlines prior to their expiration, and the likely prejudice to the Defendants," (*id.* at 9), "particularly if new claims and parties are added."  (*Id.* at 10).

The undersigned explained:

> Having reviewed all memoranda submitted, the undersigned will deny Plaintiff Luis's motion to extend the expired deadlines in either Case No. 1:11-cv-884 or in Case No. 1:12-cv-629, based upon the lack of a showing of good cause, the lack of proof of diligence in failing to comply with the deadlines prior to their expiration, and the likely prejudice to the Defendants.  The Donovan Defendants point out that Plaintiff Luis has not taken or requested a single deposition, has served no written discovery requests on any party, and has not issued subpoenas to any non-parties. (Doc. 96).  In reply, Plaintiff essentially pleads ignorance of the Federal Rules of Civil Procedure and need for formal "discovery."  In light of Plaintiff's lengthy litigation history in this court and others, the Court is not persuaded by Plaintiff's claim that he simply did not understand that formal "discovery" was required by the deadline to which he previously agreed, after having participated in a discovery conference with other counsel and before this Court.  Plaintiff's *pro se* status or newly professed ignorance does not excuse him from complying with local and federal rules of civil procedure.  For their part, Defendants represent that they have pursued discovery based on existing claims and parties, and chose not to retain any experts prior to their own July 1 deadline based upon Plaintiffs' failure to identify experts prior to Plaintiffs' May 1 deadline.  For that reason, and based upon the "countless hours" spent responding to the total of **six prior complaints/ amended complaints** filed by Plaintiff Luis, Defendants reasonably complain that they will be greatly prejudiced by the retroactive expansion of all of the Plaintiffs' expired deadlines, particularly if new claims and parties are added.
>
> **In addition, granting Plaintiff's motion would frustrate judicial economy and be prejudicial to the public interest, due to the untold expansion of claims, defendants, and time required to bring this case to resolution**. In short, Plaintiff's stated intention to bring in a host of new claims and governmental defendants would unnecessarily and inappropriately expand the scope of this litigation. As Defendant Awareness points out, given the undersigned's existing Report and Recommendation recommending the dismissal of that Defendant, it also would be inappropriate to add in new claims against individuals affiliated with that Defendant.

(Doc. 142 at 10, footnotes omitted, emphasis added).

Undeterred by the Court's analysis, Plaintiff tried an end-run around the Court's rulings by filing another motion seeking leave to file the same (disallowed) amended complaint in Lead Case No. 1:11-cv-884.  Because Mr. Luis could not "amend" by filing a completely new complaint in a case in which he was not, and had never been, a party, Plaintiff's motion in that case also was denied.  (*See* Docs. 129, 157, Report and Recommendation of 10/29/13, adopted as opinion of the Court on 04/01/14).

In Lead Case No. 1:11-cv-884, the Court reiterated that Mr. Luis appeared to seek to "greatly expand the pending litigation to the prejudice of all Defendants, with unrelated claims against newly identified defendants."  (Doc. 129 at 2, citing Doc. 142 in Case No. 1:12-cv-629).   The Court restated the reasons for denying the virtually identical motion in Lead Case No. 1:11-cv-884:

> Mr. Luis's motion for leave to amend in Lead Case No. 1:11-cv-884 should be denied on multiple grounds. The motion should be denied as procedurally improper, to the extent that it seeks to add Mr. Luis as a party "plaintiff" to a case in which he has never been a Plaintiff, and which has been consolidated only for purposes of pretrial proceedings. Additionally, the motion should be denied because Mr. Luis has – since filing the motion – settled with nearly all of the named Defendants as to which the "amended" complaint would pertain.[4] Although Mr. Luis has not settled with Defendant Awareness Technologies, the undersigned has previously recommended dismissal of that Defendant. (*See* Doc. 109 in Case No. 1:12-cv-629). If the presiding district judge adopts that pending R&R, there would be no point in granting Mr. Luis leave to reinstate already-dismissed claims. Last, to the extent that Mr. Luis still may seek to add new claims against entirely new governmental entities or other Defendants in Case No. 1:12- cv-629, the motion should be denied for the reasons previously stated in the prior order in that case. (Doc. 142 in Case No. 1:12-cv-629)

(Doc. 129 at 5).

Thus, in prior Orders this Court struck Mr. Luis's improvidently filed "amended

---

[4]In October 2013, the Court filed an entry of dismissal with prejudice of all claims filed by Mr. Luis against the other Defendants in Case No. 1:12-cv-629, based upon the parties' settlement.  (Doc. 154).

complaint" in this case,[5] denied his motion to extend existing pretrial deadlines (including but not limited to time to further amend his complaint), and denied Mr. Luis's improper motion to file an "amended complaint" in a related case. In so doing, the Court relied only in part upon the recommended dismissal in the above-captioned case of the lone remaining Defendant, Awareness Technologies. On June 20, 2014, the presiding district judge adopted the pending R&R, dismissing Awareness Technologies and entering final judgment. (Doc. 162). However on August 16, 2016, the Sixth Circuit reversed and remanded to this Court for further proceedings on certain federal and state claims. (Docs. 174-176).

The Sixth Circuit's majority opinion[6] held that Plaintiff had adequately alleged: (1) that Awareness intentionally intercepted Luis's electronic communications, in violation of 18 U.S.C. § 2511; (2) that Awareness also violated 18 U.S.C. § 2512; and (3) that Awareness violated Ohio state law (a) by intercepting and using his electronic communications within the meaning of Ohio's Wiretap Act, and (b) by invading his privacy within the meaning of the common-law tort. *See Luis v. Zang,* 833 F.3d at 625. In the intervening time period between the dismissal of Awareness by this Court and reinstatement of the claims against Awareness on remand, ten other defendants and all claims in Lead Case No. 1:11-cv-884, have been dismissed. Thus, at this point in the litigation, only Awareness and Plaintiff remain in the above-captioned case.

Following remand, this Court directed Awareness and Plaintiff to file a "Revised

---

[5]Notwithstanding the Order granting the Defendant's motion to strike strictly on procedural grounds, (Doc. 142 at 16), the improperly filed pleading remains a part of the record. (Doc. 122).

[6]Judge Gilman delivered the opinion of the court, in which Judge Merritt joined and as to which Judge Batchelder dissented. As the dissent points out, Luis did not present his current theory of his claims against Awareness before the undersigned, but instead first raised them in his objections to the R&R. *Id.,* 833 F.3d at 644 n.1.

26(f) joint discovery plan." (Doc. 177). On October 24, 2016, Plaintiff and Defendant complied with the Court's Order. (Doc. 179). The parties agreed to complete initial disclosures by November 30, 2016, with Plaintiff to complete expert disclosures by July 10, 2017 and Defendant to make corresponding disclosures by September 8, 2017. Fact discovery is to be completed by May 1, 2017, with expert discovery to be completed by November 30, 2017. The parties' report included a statement that Plaintiff Luis was seeking additional deadlines to allow him to further amend his complaint, and to file motions for the appointment of counsel and expert witnesses. (Doc. 179 at 4).

After a pretrial telephonic conference, all of the parties' jointly proposed deadlines were incorporated into the Court's Calendar Order of November 3, 2016. In addition, the Court granted Plaintiff's request to include an additional deadline (January 31, 2017) to move to amend pleadings and/or seek to add parties. (Doc. 181).

The Court subsequently denied Plaintiff's motion for the appointment of counsel and/or the appointment of experts to assist him. (Doc. 188).[7] The Court also denied a motion to further extend time in which to move to further amend his complaint, based upon Plaintiff's position that the appointment of counsel would assist him in that task, and denied Plaintiff's motion to force Awareness Technologies to participate in mediation. (*Id.; see also* Doc. 192).

Plaintiff filed a motion to further amend his complaint one day after the deadline expired, on February 1, 2017. (Doc. 187). He filed a corrected version of the same

---

[7]In denying Plaintiff's motion for the appointment of counsel, the undersigned considered Plaintiff's demonstrated abilities in this case, his level of education (as a law school graduate), as well as several other reasons that disfavored appointment. The Court explicitly rejected Plaintiff's position that counsel was required to assist Plaintiff in identifying new defendants and claims.

motion on February 6, 2017.  (Doc. 189). [8]

## II.  Analysis of Currently Pending Motion To Amend

Close examination of Plaintiff's current motion to file a "second amended" complaint confirms that the tendered complaint is similar to the "First Amended Complaint" that was previously disallowed in this case, when Plaintiff filed it without an accompanying motion on May 1, 2013.  In addition to review of Defendant's opposition to the proposed amendment, this Court has an independent responsibility to review the proposed amendment under the screening standards set forth in 28 U.S.C. §1915(e).

### A.  Proposed New Defendants

In the prior version filed nearly four years ago, Plaintiff sought to add a number of individuals who were described as agents or current or former officers of Defendant Awareness Technologies. (*See* Doc. 121 at ¶¶ 13-18).  In the recently tendered complaint, Plaintiff seeks to add the same eight individuals, all of whom are alleged to be affiliated in some way with the corporate Defendant. (*See* Doc. 189 at ¶¶ 3-8).

In addition to renaming the individuals whom he previously sought to add in 2013, Plaintiff also seeks to add Verizon Communications and Cincinnati Bell, both of which are identified as providers of "electronic communications services to the public" which have "the ability to send or receive wire or electronic communications."  Plaintiff alleges that he subscribed to Verizon's communications services in Florida, and that his communications were "handled by or were routed to" Cincinnati Bell's infrastructure and "almost instantly rerouted to a third party router via Bell's lines of commerce."  (Doc. 189 at ¶¶ 9-10).  Last but not least, Plaintiff seeks to add "parties as yet unknown to

---

[8]Technically both of these motions were untimely, but in the interests of justice, they are considered as if timely filed.

Plaintiff," leaving the door open for future amendments. (Doc. 187 at 2).

In support of the proposed amendment, Plaintiff relies exclusively on Rule 20(a), Fed. R. Civ. P. He argues that all new Defendants and new claims "arise out of the same transaction, occurrence, or [series] of transactions or occurrences as the claims of wrongdoing against the Plaintiff." (Doc. 187 at 3). He describes the eight newly identified indifiduals as "top-level executives on the Board of Awareness Technologies" who have "played a part in the design and the continued illegal marketing of their dangerous product." (*Id.*) Nowhere in the tendered complaint, however, does Plaintiff describe any particular actions taken by any of the named individual "executives."

With respect to the two Defendants described as "telecom" companies, Verizon and Cincinnati Bell, Plaintiff argues that they "could not have possibly been added until recent classified information had been released into the public, which revealed their hand in various ongoing mechanisms of nationwide intercept of electronic communications." (*Id.* and at n.2, citing undated "Edward Snowden revelations").[9] To the extent that this Court denies his motion, Plaintiff broadly "requests a chance to further amend." (*Id.*)

Defendant Awareness Technologies has filed a memorandum in opposition to Plaintiff's motion to amend, to which Plaintiff has failed to reply. As a preliminary matter, Defendant correctly points out that in the caption of the proposed amended complaint, Plaintiff lists eight individuals, including Kristen Habacht and Howard Johnson, but that Ms. Habacht and Mr. Johnson's names are wholly absent from the body of the tendered amended complaint. (Doc. 189; see also Doc. 121, reflecting an

---

[9]Absent details of what information was learned on what dates, Plaintiff's argument that the telecoms "could not have possibly been added" is unconvincing. However, as discussed herein, he should not be permitted to add new claims against the telecoms for multiple other reasons.

identical deficiency). Therefore, Plaintiff's motion to amend to add Ms. Habacht and Mr. Johnson should be denied for failure to state any claim against them.

With respect to the remaining six individuals who Plaintiff maintains are "top executives" of Awareness Technologies, the undersigned agrees with Defendant that the amendment should not be permitted – at least to the extent that Plaintiff seeks to hold the executives personally liable - because Plaintiff has failed to state any claim against them. The proposed amendment does little beyond naming the individuals and alleging their official relationship to the corporate Defendant. For example, he alleges that Brad Miller "is the registered agent of Awareness and holds himself out as the company CEO and chairman." (Doc. 189-1 at ¶ 3). He alleges that Peter Fuhrman "is a co-founder & past CEO of Awareness Technologies." (*Id.* at ¶ 4). Ron Penna is alleged to be "co-founder and Chief Strategy Officer of Awareness." (*Id.* at ¶ 5). Mike Osborne is alleged to be "co-founder and Chief Operating Officer." (*Id.* at ¶ 6). Jow Arif is "Managing Director," and Jason Fitch is "Chief Technology Officer." (*Id.* at ¶¶ 7-8). Plaintiff fails to otherwise identify any of these new individuals, and does not provide their addresses.

Aside from variances in their corporate titles, Plaintiff's allegations against all six individuals are identical. In a conclusory fashion, he alleges that each "individually or in concert with others, has formulated, directed, controlled, or participated in the acts and practices set forth in this complaint, and did so at times pertinent to this action." (*See, e.g.,* Doc. 189-1 at ¶ 3). Notably, Plaintiff does not include any allegations concerning any specific action taken by any individual in connection with any of the incidents that form the basis for Plaintiff's underlying claims against Awareness Technologies.

11

Instead, in the federal Wiretap and other claims, Plaintiff simply includes the individuals by describing the actions taken as by "Awareness Technologies *and all of its named employee defendants.*" (*See, e.g.*, Doc. 189-1 at ¶ 63)

The undersigned concludes that merely alleging that the six individuals are officers, executives, or members of the Board of the corporate Defendant and – solely by virtue of their capacities as such – are *individually and personally* liable for the acts of the corporation - is not sufficient to state any claim against them. The fact that the individual defendants are current or former executives of Awareness does not automatically shift personal liability to them for actions taken by the corporation. Plaintiff has previously alleged and continues to allege that the WebWatcher product, once installed, automatically intercepted Plaintiff's communications. (*See, e.g.*, Doc. 189-1 at 9-10, ¶ 34, alleging that "although no one at [Awareness] …personally handled or read the stolen intercepts, since the acquisition, delivery and use of the intercepts was largely automated, [Awareness] et al is considered to have violated the Act for having designed, marketed and sold a …device for the purposes protected by the Act."). While it is true that officers of a corporation may be held personally liable if there is evidence sufficient to justify piercing the corporate veil, Plaintiff has failed to include any allegations in the tendered amended complaint that would support such liability. Instead, under the *Twombly/Iqbal* standard,[10] Plaintiff's new allegations against the six individual "executives" are wholly conclusory and insufficient to state any claim as a matter of law.

Plaintiff's new allegations against the two newly identified "telecom" Defendants

_____

[10] *See Ashcraft v. Iqbal*, 129 S.Ct. 1937, 1974 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

are equally deficient.    Plaintiff identifies Verizon Communications as Delaware corporation with its principal place of business in New York, which also conducts business in Florida and Ohio.   Plaintiff identifies Cincinnati Bell, Inc. as a similar provider of electronic communications services, headquartered in Cincinnati, Ohio. (Doc. 189-1 at ¶¶ 9-10).   Plaintiff alleges that his internet connection was provided by Verizon, while Cathy Zang's connection was provided by Cincinnati Bell.   He alleges that both broadband providers

> were at all times responsible for the integrity of their lines of commerce and have had the technology and the ability – as have all major ISP providers since the 1990s thanks in part to the Communications Assistance for Law Enforcement Act (CALEA) – to have detected the ongoing intercepts and rerouting of communications to and from their broadband lines of commerce.  These new Defendants either negligently – or more likely with full awareness of the ongoing activities – allowed the intercepts to continue fully unhindered on their lines of commerce to the determinant of their customers' electronic communications….

(Doc. 189-1 at ¶ 59).   He further alleges that the providers had "a duty to protect [customers] from private intercepts," and that the "lack of proper security and failure to warn allowed for these occurrences to go on unabated for a substantial period of time." (*Id.*)  Under CALEA, he claims that both telecoms "have a duty…and should have safety protocols in place to prevent the rerouting of information to unauthorized third parties or at least to warn its users that the information is being intercepted and re-routed to a third party," and that both are "guilty of negligence and failure to warn."  (*Id.* at ¶ 60). Plaintiff broadly suggests that "[t]here are many questions of law and fact," including "[w]hether telecoms – which are required by law to have the equipment in place that easily alerts its security measures as to the instant re-routing – are negligent and/or complicit with the spyware industry by keeping their trusting clients in the dark about the

fact their private conversations are being almost instantly rerouted on their lines of communication." (*Id.* at ¶ 61(h)).

The claims against these newly "telecoms" should be dismissed because the joinder of such claims, involving distinctly different facts and law, is not supported by Rule 20(a). Additionally, using the defining characteristics of Plaintiff's federal claims against Awareness under 18 U.S.C. §§ 2511 and 2512, Plaintiff has failed to state a claim against either of the telecoms. Plaintiff also has failed to provide any justification for not including the same allegations in a timely manner much earlier in the course of this litigation, and the inclusion of new Defendants and new claims would unnecessarily complicate bringing this long-pending litigation to a conclusion.[11]

### B. Proposed New Claims

Defendant Awareness Technologies explains that it generally opposes granting Plaintiff leave to amend to add any new claims at all, on grounds that Plaintiff has provided no reasons as to why he could not have brought the newly proposed claims at an earlier date. I agree, but also recommend the denial of the amendment to add multiple new claims for other reasons.

### 1. Plaintiff may not re-assert previously dismissed claims

Plaintiff's last amended complaint, filed on July 20, 2012, defined the following ten claims as Counts 1-X: (1) Violations of the Wiretap Act; (2) Invasion of Privacy and Conspiracy to Commit Invasion of Privacy; (3) Violations of Florida's Security of Communications Act; (4) Violation of Ohio Revised Code 2933.52; (5) Bullying and Harassment; (6) Civil Conspiracy; (7) Intentional and Negligent Infliction of Emotional

---

[11]While it is unclear whether the proposed expansion of Plaintiff's Wiretap claims to new defendants would "relate back" to the filing of Plaintiff's original complaint, for purposes of the two-year statute of limitations set forth in 18 U.S.C. §2520(e), a full analysis of that issue is unnecessary for disposition.

Distress; (8) Conversion and Unjust Enrichment; (9) Aiding and Abetting; and (10) Defamation.    (Doc. 39).    This Court dismissed all ten of these claims against Awareness.

Plaintiff's proposed amended complaint restates all ten of his original claims, and adds at least five more.  However, on appeal to the Sixth Circuit, Plaintiff challenged only the dismissal of the following claims: (1) that Awareness intentionally intercepted Luis's electronic communications, in violation of 18 U.S.C. § 2511; (2) that Awareness also violated 18 U.S.C. § 2512; and (3) that Awareness violated Ohio state law (a) by intercepting and using his electronic communications within the meaning of Ohio's Wiretap Act, and (b) by invading his privacy within the meaning of the common-law tort. *See Luis v. Zang*, 833 at 625 (defining Plaintiff's causes of action).  The Sixth Circuit clearly considered Plaintiff's appeal to be limited to those claims:  "As relevant to the current appeal, the complaint asserts three causes of action against Awareness."  *Id.*. Having waived any appeal of this Court's dismissal of any other claims against Awareness, Plaintiff cannot now resurrect those claims. *See also id*. at 640 (reiterating that on appeal, Luis challenges the dismissal of only two of his state law claims, in addition to the dismissal of his Wiretap claims against Awareness).  Specifically, Plaintiff may not re-assert in the tendered amended complaint: (1) Count VI (Violation of Florida's Security of Communications Act); (2) Count VIII (Bullying and Harassment); (3) Count IX (Civil Conspiracy); (4) Counts X and XIV (Intentional and Negligent Infliction of Emotional Distress); (5) Count XI (Conversion and Unjust Enrichment); (6) Count XII (Aiding and Abetting); or (7) Count XVI (Defamation).

The remaining claims articulated in the tendered amended complaint are as

15

follows:  (1) Violation of 18 U.S.C. § 2511; (2) Violation of 18 U.S.C. § 2512; (3) Theft of Intellectual Property Under the CFAA; (4) Stored Communications Act; (5) Invasion of Privacy and Conspiracy to Commit Invasion of Privacy; (6) Violation of Ohio Revised Code 2933.52; and (7) Common Law Strict Liability. Of these seven claims, none of which were previously dismissed, four are subject to dismissal under 28 U.S.C. § 1915(e) for failure to state a claim, and/or in the interests of justice based upon Plaintiff's failure to earlier assert the claims against Awareness in a timely manner. Thus, the only amendments that should be permitted are reflected in Counts I, II, V, and VII,[12] which expand upon the claims previously filed by Plaintiff against Awareness in his last amended complaint.

### 2.  Theft of Intellectual Property Under the CFAA

Plaintiff's first entirely new claim appears in Count III, and is captioned as the "Theft of Intellectual Property Under the CFAA."  In this claim, Plaintiff alleges that all Defendants "jointly and severally" violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030.  Initially a criminal statute, the CFAA was expanded by Congress to provide for private civil causes of action in 1994.  See *American Furukawa, Inc. v. Hossain*, 103 F. Supp.3d 864, 870 (E.D. Mich. 2015).  Plaintiff's CFAA claim against multiple individuals associated with Awareness, two telecoms, and Awareness Technologies is clearly novel, and would require an expansive reading of the CFAA that is not presently supported by any controlling case law.

The provision under which Plaintiff is attempting to bring a claim is violated only

---

[12]Count I is captioned:  "Violation of 18 U.S.C. §2511 – Interception of Electronic Communications Under ECPA."  Count II is captioned:  "Violation of 18 U.S.C. §2512 – Manufacture, Distribution, Possession And Advertising Of Wire, Oral Or Electronic Communications Intercepting Devices Prohibited."  Count V is captioned:  "Invasion of Privacy and Conspiracy to Commit Invasion of Privacy."  Count VII is captioned: "Violation of Ohio Revised Code 2933.52."

when an individual "*intentionally* accesses a computer without authorization or exceeds authorized access and thereby obtains information from any protected computer." 18 U.S.C. §1030(a)(2) (emphasis added); *see also Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 766 (N.D. Ill. 2009) ("The elements of a section 1030(a)(2) violation ... include (1) intentional access of a computer, (2) without or in excess of authorization, (3) whereby the defendant obtains information from the protected computer.").  The type of intentionality specified presupposes something other than the passive activities alleged by Plaintiff here. *See also generally Dice Corp. v. Bold Technologies*, 556 Fed. Appx. 378, 387-388 (6th Cir. Jan. 24, 2014) (affirming dismissal of "complex claim of unauthorized access" under CFAA); *but see Morgan v. Preston*, 2013 WL 5963563 at *4-5 (M.D. Tenn. Nov. 7, 2013) (dismissing plaintiff's CFAA claim against defendant spouse who installed spyware on home computer on grounds that plaintiff had failed to sufficiently allege the requisite amount in damages, declining to address multiple additional arguments that the CFAA would not cover the alleged conduct).

The undersigned concludes that Plaintiff's allegations are insufficient to state a CFAA claim as a matter of law against Awareness or any other defendant.  In addition to the failure of the complaint to allege sufficient intentionality, a plaintiff bringing an action under the CFAA's civil enforcement provision must do so "within 2 years of the date of the act complained of or the date of the discovery of the damage."  18 U.S.C. § 1030(g).  To the extent any reviewing court may disagree, the undersigned alternatively concludes that the addition of a CFAA claim at this date is not supported by Rule 20(a).

### 3.  Stored Communications Act (18 U.S.C. § 2701)

Plaintiff's second new claim is that Awareness and other newly identified

defendants have violated the Stored Communications Act. However, such a claim would necessarily require Plaintiff's personal computer to be a "facility." The vast majority of published and non-published decisions that have considered the issue have explicitly held that neither a mobile phone nor a personal computers is a "facility" through which electronic communications services are provided, sufficient to state a claim under the SCA. *See, e.g., Cousineau v. Microsoft Corp.*, 6 F. Supp. 1167 (W.D. Wash. Mar.25, 2014) (citing *In re iPhone Application Litig*, 844 F. Supp.2d 1040 (N.D. Cal. 2012) and collecting cases); *Morgan v. Preston*, No. 13–cv–0403, 2013 WL 5963563, at *5 (M.D.Tenn. Nov.7, 2013) ("the overwhelming body of law" supports the conclusion that "an individual's personal computer is not a 'facility through which an electronic communication service is provided'"); *In re Nickelodeon Consumer Privacy Litigation*, 2014 WL 3012873, at *16 (D.N.J., 2014) (same). Like the CFAA, the SCA also provides for a two-year statute of limitations. 18 U.S.C. § 2707(f). Therefore, Plaintiff's SCA claim is also subject to dismissal under 28 U.S.C. §1915(e).

### 4. Common Law Strict Liability

The third new claim that Plaintiff seeks to add is titled "COUNT XIII, Common Law Strict Liability." Despite referencing "common law," the allegations of the claim rest upon alleged violations of product liability statutes, specifically Ohio Revised Code sections "2307.75, 2307.6, 2307.77, 2307.78, and 2307.80," based upon alleged "flaws in [the] manufacture and design [of WebWatcher] and failure to properly warn and oversee the continued use of its implements of intercept." Plaintiff alleges that these flaws "allowed Awareness to sell and market a dangerous product it knew or should have known could cause massive damage to victims of [its] use." (Doc. 189-1 at ¶124).

18

Plaintiff complains that not only was Joseph Zang's use of WebWatcher foreseeable, but it was "*intentionally* marketed to the criminal client precisely for that illegal purpose." (*Id.*, italics original).

Even assuming that Plaintiff would have standing to bring such a claim, he offers no explanation for his failure to bring this claim in any of his multiple amendments over the lengthy period this action remained pending prior to this Court's dismissal of his federal and state Wiretap claims, and invasion of privacy claim against Awareness.  In addition, it is clear that the issues of fact and of law relating to this newly alleged and extremely complex products liability claim are not so intertwined with the existing claims that the amendment can be supported by Rule 20(a)(2).

### 5.  Allowable Amendments and Future Amendments

Plaintiff's generic request to preserve his right to amend in the future, or to add "parties as yet unknown to Plaintiff" at some unspecified future date, (Doc. 187 at 2), should be denied.  The interests of all parties, the Court, and the public strongly support the disallowance of any continuing or future attempts to add new claims or parties.

In short, Plaintiff's current motion to amend his complaint should be granted only in part.  Plaintiff's "corrected" motion for leave to further amend his complaint (Doc. 189) should be granted *only* insofar as Plaintiff's tendered amendment (Doc. 189-1) seeks to clarify the existing claims against Defendant Awareness Technologies, concerning which the Sixth Circuit remanded to this Court for further proceedings.

Plaintiff's last amended complaint referenced Defendant Awareness Technologies only twice – in paragraphs 12 and 96.  It was Plaintiff's inclusion of marketing materials as exhibits to his pleading that proved sufficient "to support a

reasonable inference that Awareness, via WebWatcher, acquired Luis's electronic communications contemporaneously with their transmission." 833 F.3d at 630. Plaintiff's tendered amended complaint greatly expands his allegations against Awareness and breaks his original single (but two-part) federal Wiretap claim into two distinct claims, consistent with the Sixth Circuit's opinion.

Plaintiff's motion to amend should be partially granted, but limited to the claims reflected in Counts I, II, V, and VII in Doc. 189-1 against the single Defendant, Awareness Technologies, Inc, consistent with this Report and Recommendation. Pursuant to 28 U.S.C. § 1915(e), and for other reasons noted in this Report and Recommendation including but not limited to the lack of grounds to include new claims and defendants under Rule 20(a) and the law of the case (as to previously dismissed and unappealed claims), all other claims in the tendered amended complaint should be dismissed.

### III. Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** Plaintiff's construed motion to further amend his complaint (Doc. 189) should be GRANTED ONLY IN PART and otherwise should be DENIED. A separate Order has been filed this same day directing the Clerk of Court to file the newly amended complaint, subject to this R&R recommending dismissal of certain claims and parties.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAVIER LUIS,                                                    Case No. 1:12-cv-629

                        Plaintiff,                              Dlott, J.
            v.                                                  Bowman, M.J.

JOSEPH ZANG, et al.,

                        Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).